On October 15, 2002, just a few blocks from here, Immigration Judge Kenneth Josephson granted 212C relief to Mr. Puri. This was done after many hearings and after having observed Mr. Puri's demeanor over many hours, and after having heard the testimony of his wife and others. Judge Josephson's factual findings were correct, his legal analysis was correct, and he properly exercised his discretion. Significantly, he found that the best indicators of rehabilitation included Mr. Puri's lack of recidivism since his release in 1993, and his stable employment and strong family and community ties. In contrast, on June 10, 2004, the BIA reversed Judge Josephson in a decision that was factually wrong, legally wrong, and such an abuse of discretion was to constitute manifest injustice. It was factually wrong because it found an absence of rehabilitation in contravention of the record. It was legally wrong because it cannot be squared with the Board's own controlling case law, matter arreguin, in which a woman with a much more serious offense was granted 212C relief. Well, what can we do about that? The BIA remanded it back to the I.J., and the I.J. made a decision and denied the 212C relief. That's what you're talking about, I think. Is that right? That's correct. On the Board's order. He was ordered to do so. And then apparently went back up to the BIA, which affirmed. And then there was a late appeal to our court from that BIA decision. Is that correct? Even more complex than that. There was a... He went down and back again. That's right. There was a motion to reopen, reconsider. That went up to the Board. That was denied. All of them were appealed. Yeah. But there was no timely appeal from the BIA decision to our court. Instead, there was a petition for a writ of habeas corpus filed in the district court. Isn't that right? I argued that the petition for review was timely filed. Oh, okay. And I'll reach that. But you lost that. Although... But you lost that already. I did. That's not before us. It's not. All right. What is before us? The... So far you've given us a great deal of background, but... The denial of... We haven't reached the issue that's before us, have you? The denial of the habeas. And... On what ground? The issue is that the combination of the Board's factual and legal errors results in manifest injustice. This case is about the third prong of habeas jurisdiction, the manifest injustice prong discussed by Judge McKeown in her concurrence in Gutierrez-Chavez, not the earlier version cited by the government, but the July 2003 amended version, 337, Fed Third, 1023. The meaning of that prong, the manifest injustice prong of habeas jurisdiction... Is there any other authority aside from that one judge concurrence that you can cite? No court has fleshed out the meaning and the applicability of the manifest injustice prong, and I think that's why this case is so important and perhaps why the case, why the panel selected it. Yeah, but this was a habeas corpus petition, and Judge Zille said that the new act required that it be filed in our court, not before him, so he dismissed it. And I believe that he is he was wrong because... He has jurisdiction to decide his own jurisdiction? That, plus, because the district court in habeas has three prongs, statutory, constitutional, and manifest injustice, whereas the circuit, under Petitioner for Review, only has statutory and constitutional, the district court, excuse me, the circuit court after Real ID has less power to right a wrong than the district court did and still does under habeas. Thus, Real ID fails the adequate and effective substitute test of Swain v. Presley and triggers suspension clause issues. Are you addressing now the issue that the Real ID Act is unconstitutional? That portion of it. Is that what you're arguing right now? A suspension clause violation, yes, Your Honor. Because under your reading, you have you can you can obtain a certain kinds of relief in habeas that you couldn't obtain on a petition for review. Yes, because the district court has three jurisdictional avenues, more power. It can address manifest injustice, whereas it appears that the circuit under Real ID after Real ID only can address statutory and constitutional issues and apparently has no power to address manifest injustice, which the district does, still does. All right. Are there any cases that foreclose you making this argument? None of which I'm aware, Your Honor. I urge the Court to reread Judge McKeown's concurrence in Gutierrez-Chavez. The facts in Gutierrez-Chavez did not rise to the level of manifest injustice, but the facts in Mr. Puri's case do. He's been a model permanent resident since 1993, over 13 years ago. Deporting him would send no message of upholding the rule of law. It would merely send the message that our immigration bureaucracy is cruel and arbitrary. And recall that these very removal proceedings were triggered by Mr. Puri's own innocent pro se naturalization application. If he had not chosen to try to upgrade from green card to citizenship, immigration never would have paid the slightest bit of attention to him. It's so ironic that by trying to become a citizen, he's facing deportation. Well, I don't think his facts are quite as sympathetic as you state them in terms of that obviously the convictions were serious convictions and, you know, we're not talking about someone that had a conviction for petty theft and then is claiming rehabilitation. But those obviously have been decided. Neither are we talking about rape. We're talking about someone who fondled the breast of an adult co-worker many, many years ago. And the government has cast him as an aggravated felon, a crazed sex offender, and it simply doesn't square with, particularly with Matter of Arrogance. And recall that in Matter of Arrogance, the Board's last published 212C case, 212C relief was a pro. Are you talking about the indecent liberty, but there was also a child molestation too, correct? Yes, but he's not deportable for that. He received a JRAP for that, a judicial recommendation against deportation. In Matter of Arrogance, the Board upheld a grant of 212C relief to a woman who had been convicted in Federal court for importing 75 pounds of marijuana. And at the time of her 212C grant, she was in prison, so her rehabilitation was entirely speculative, whereas Mr. Puri's rehabilitation was proven and is proven to this day by his lack of recidivism. Now, just so that I understand your argument, is it your argument that all aliens and removal proceedings should have the right to an additional fact finding in the district court after the BIA has entered a final order of removal, or are you just arguing, like Mr. Puri, just criminal aliens? Any alien, but only if there's manifest injustice. If the issues are limited to statutory issues or constitutional issues, then, yes, I would agree that Real ID properly channels that BIA decision only to the circuit. But where the case exhibits manifest injustice, then the district court, under habeas, still retains justice. But isn't your manifest injustice ground really a question of law? No. It's a combination of facts and law. In this case, the board's decision got the facts wrong and the law wrong. You put those together, you have manifest injustice. And again, this is really, I believe, a matter of first impression. I found nothing that discusses in the immigration context, and even not remotely in the criminal context, the phrase manifest injustice. Are you saying that it's your position that in habeas, in this kind of case, under the manifest injustice prong that the district court can review the factual findings of the board? Is that what you're saying? Yes, Your Honor. And they should. Under what standard? Clear error. For example, in the board found. Why doesn't the usual standard of review apply? That that applies in immigration cases? It could. I'm positing what they should do. We don't know because no court has yet done it, as far as I can tell. And I believe that they should have. In addition, at the very least, the district court should have transferred the case to the circuit. And I believe that it's under conversion and merger, as I asked the court to do. Well, if it's transferred, we can only hear it as a petition for review, so we can't consider the manifest injustice prong. So what difference does it make? Well, you're correct on that. And so, in a sense, I'm going to do it for you. In a sense, I'm going to do it for you. Because you already, in essence, lost a transfer by filing a late petition for review. So in that sense, I'm glad that they denied it so we could present the case. Well, what's the error in not transferring? You've stumped me. Thank you. Do you have any other comments, or did you want to reserve the balance? I'll reserve it. Thank you. We'll see what we can do. All right. Thank you. Thank you. Good morning. I'm Christopher Pickrell, Assistant U.S. Attorney, Seattle, Washington. Good morning. On behalf of the respondents, the petitioner in this case is now subject to a valid, lawful, longstanding, and final order of deportation. He has litigated that order for nearly a decade. And as we pointed out in our brief, he's been before the BIA three times, the immigration court three times, district court two times, and now he comes back to this court. The Real ID Act, in part, was enacted to stop this sort of endless litigation, to give every alien, including a criminal deportable alien, one bite at the apple. And that bite is to be in the court of appeals through a timely filed petition for review. In this case, the petitioner did not file a timely petition for review. This court issued an order to show cause why the petition should be dismissed, and upon briefing of that issue by the Justice Department and the petitioner, the dismissal order was entered. That is res judicata. Now the man comes back, files a new habeas petition in district court, and wants to litigate again the merits of his removal order. To that end. Kennedy. Well, but he seems to be raising a different question, and the threshold is whether or not the Real ID Act violates the suspension clause in this kind of situation because it has a narrower grounds for review. And apparently there's no case right on point. Do you agree with that? First of all, that there's no case right on point on the suspension clause issue? I filed a 28-J letter last Thursday or Friday listing five or six new cases that have held that the Real ID Act does not violate the suspension clause. Furthermore, and counsel may correct me. Unpublished Eleventh Circuit, right? Yes. In other words, from the Southern District of California, from the District of Connecticut, District of Connecticut. So there's no circuit law in it, is there? Well, under the Eleventh Circuit rule, I can and did cite that decision, but it's unpublished. It's not binding even under Eleventh Circuit. Correct. It has less precedential value. I repeat, there's no circuit law. Well, it's not a trick question. Yeah, there's no circuit law in it, is there? Well, it depends on what's going on. Is there Ninth Circuit law? Is there a Supreme Court case? If we phrase the question, are we talking a suspension clause issue here in that the guy does not, under the Real ID Act, get an automatic new hearing before the district court, new evidentiary hearing, there is law on that. Today, I believe for the first time, and counsel will correct me if I'm wrong, they're changing the nature of the suspension clause argument and focusing on no manifest injustice. What do you mean changing it? It's in his brief. It is in his brief, but he styles it as an argument that the Real ID Act violates the suspension clause because it takes away the opportunity for a new evidentiary hearing in district court in a habeas proceeding without acknowledging, as I'm sure the Court is aware, that evidentiary hearings in habeas proceedings are very, very rare, and also without acknowledging that the Hobbs Administrative Order Review Act, this Court, is... Well, let's get back to my question. First of all, there's no Ninth Circuit authority on the issue, is there? Right? Your Honor, on the issue of the manifest injustice, I haven't briefed that. It wasn't raised in the opening brief. And I would be inclined to think that there is indeed Ninth Circuit law, although I'm embarrassed that I'm unable to cite it to Your Honor. I shouldn't be embarrassed because it didn't come up this morning. Well, there isn't. I think if there were a case that either of you could resolve this dispositively, we probably wouldn't be sitting here in oral argument. We would have submitted it on the briefs. And so, you know, the point is just in terms of if we, you know, would we write an opinion on this so that there would be Ninth Circuit law. And it's not a trick question. I mean, I'm assuming if you had a case that was completely dispositive, we could we'd be asking him to distinguish it and you would be citing it, and I don't think I'm not hearing either of that happen. No, Your Honor is correct. I know of no Ninth Circuit case holding that the Real ID Act does or does not violate the suspension clause. But before the Court moves to that weighty issue, we would suggest that the Court should discuss standing. Does this man in this particular circumstance have standing to raise this issue after his case, his petition has already been dismissed by this Court? That would be a constitutional issue, would it not? The constitutionality of the suspension clause issue? It would. And that could be raised in a habeas petition if it were filed in the right court. And if it had been filed in this court, we would have jurisdiction to decide that constitutional question. The question is, here Judge Zille said, well, I don't have jurisdiction to consider it, so I'm going to dismiss it. Instead of saying, well, he's raising a constitutional question, the proper place for this habeas petition to have been filed was the circuit court. I'll transfer it to the circuit court. But he never did that. He did not. And is there some error in not doing that? Or should we look at it and say, well, we look at the suspension clause claim, and we conclude it's not valid. So even though he didn't transfer it, it doesn't make any difference. He was correct in denying it. Let's recall, Your Honor, that when Judge Zille entered his dispositive order in the habeas case, this gentleman's petition for the earlier petition review was still pending before this Court. So it cannot be said that Judge Zille abused discretion by simply dismissing the case. The Seventh Circuit, in a case called Chen that's in our brief, has held precisely this, that if you file your habeas petition well after the date of enactment of the Real ID Act, and in this case it was months afterwards, the district court has no obligation to transfer it to the court of appeals. Well, I thought it would have been the habeas petition would have been timely had it been filed in this court, because but it was filed in the wrong court. It was filed in the district court. Is that wrong? I mean, at the time he filed his habeas petition in district court, the Real ID Act required that petition to be filed in this court. And the time to file it had not expired, I think. Am I wrong in that? I believe the Court is incorrect, because, well, he filed the habeas petition first and then several days later filed the untimely petition for review in this court. Right. But when Judge Zille ---- I think his habeas petition would have been timely if he had filed it in this court. I'll check the record to be sure, because I ---- If he filed it as a habeas appeal or if he filed it ---- I don't think that's the case.   And I don't think that's the case for a petition for review as the Real ID Act requires. Let's also remember that the wholesale transfer of these habeas petitions to this court under the Real ID Act only applied to the cases ---- habeas cases that were pending in the district court on May 11th of last year. This man's case was never filed until August. Okay. I'll check the record. Mr. Pickrell, let me get back to the question about what was raised and not raised. Now, you seem to be arguing, among other things, that this argument about the manifest injustice ground is a new ground. First of all, it wasn't raised in the district court. Is that your understanding? That's my recollection, Your Honor. Now, I'm looking at the, you know, the report and recommendation of the magistrate judge, and there it discusses, this is Judge Benton, to some extent the suspension clause argument, and it seems to confirm your position that the gist of the argument is that because the reason the suspension clause is violated is because the Real ID Act strips the court of power to hear and determine facts and to take evidence. Right? That seems to be the argument. That was the argument made below. That's the argument made in the opening brief and in the reply brief. So your position is that the manifest injustice argument is not properly before us because it was not raised until the reply brief? That is correct. I don't think it looks good for the Justice Department to make an argument that manifest justice is not grounds for granting of a petition. I mean, that's what the root of habeas corpus is all about. Still, as we cited in our brief, the Daniels case in the Supreme Court says you can waive constitutional issues by failure to timely raise them. Well, in this case, we have a late filed petition for review, and we have what I would characterize as a late raising of this argument, this particular slant on the suspension clause. But in any event, the petitioner in this case admits he got a full and fair hearing in immigration court. Even now, he doesn't tell this court what new additional information he'd like to elicit through an evidentiary hearing in district court. He simply disagrees that the board reverse the I.J. Well, at the most, that's abuse of discretion. And under the Gutierrez-Chavez case, which my esteemed counsel has cited, that is not enough to create an error of law or of constitutional dimension that would trigger habeas. One other point I'd like to emphasize. In this case, the underlying relief sought by the petitioner is the so-called 212C waiver, and later, during the subsequent processing of his administrative appeal, a motion for reopening or reconsideration. All of these items of potential relief are discretionary. And as we said in our brief, you cannot hang a constitutional right sufficient to trigger habeas corpus on a form of immigration relief that ultimately is discretionary with the Attorney General. And that's all this man has. In conclusion, I'd like to recite the case, the statute that we mentioned in our brief, the Hobbs Act, 28 U.S. Code 2347B, which preserves the right of this court or any court of appeals to remand an administrative law case such as a deportation case either to the district court or directly back to the agency for an evidentiary hearing. The Supreme Court in the St. Cyr case said this is an adequate and effective substitute for habeas corpus. So in that respect, maybe I should stand corrected. The St. Cyr case, the Supreme Court says, and that was dealing with criminal aliens who at that point, Your Honor, were supposedly deprived of the opportunity to file a petition for review. St. Cyr said Congress could, without violating the suspension clause, give all aliens the right to file a petition for review in the court of appeals, and that would be an adequate and effective alternate to habeas corpus and would not violate the suspension clause. So perhaps I should answer my earlier questions differently. The Supreme Court in St. Cyr has indeed held or at least stated directly that if a person has the option of filing a petition for review, then there is no suspension clause issue. All right. Thank you. Thank you. Maybe you can start with the facts here have been developed before an agency. Why isn't our review of the agency record adequate under St. Cyr? In a petition for review context or in a ñ in a ñ Well, I think ñ I think why ñ in this ñ in the context of your particular case, I mean, the facts have been developed in front of the agencies. Obviously, you don't agree with the result, but why isn't our review of the agency record adequate under St. Cyr? Well, to ñ to answer it this way ñ I mean, other than that you want a different result. I mean, that doesn't ñ Sometimes the agency ñ often the agency by itself gets everything wrong, the facts and the law, and it takes a further evidentiary hearing to flesh that out. For example, in 1992 ñ well, Brother Pickrell mentioned the fact that evidentiary hearings in habeas and immigration are rare, but they're not unknown. In 1992, in the Tenth Circuit, I was the lawyer in the Marchak case, M-A-R-C-Z-A-K, 971 Fed Second 510. That was an ñ a Tenth Circuit review of a district court immigration habeas case in which the issue was discretionary. The ñ the discretionary call of the then INS district director to parole in a Polish sailor out of custody. The district director made his decision. We petitioned for review of that decision in habeas. The district court heard it and had an evidentiary hearing. We had the district director on the witness stand. The court held that was proper to do. It went up to the Tenth Circuit. The Tenth Circuit said that's fine. Now, has Real ID changed that? Does Real ID mean that a district court may no longer have an evidentiary hearing to ñ to delve into a discretionary issue of an immigration agency? I don't think so. I think what Judge McKeown means in the manifest injustice prong of habeas jurisdiction is that the district court retains that power, and in a case such as this, must exercise it. Nothing further. I thank the Court for this one. All right. Unless there's any further questions, the matter now will stand submitted. Thank you both for your argument.
judges: Thompson, Tashima, Callahan